THERESA D. HALL, Administratrix of the Estate of MICHAEL H. HALL, and THERESA D. HALL, Individually, Plaintiffs v. TOREROS, II, INC., Defendant

No. COA05-199

(Filed 7 March 2006)

**1. Appeal and Error— preservation of issues—failure to argue**

Six of the original seven assignments of error that plaintiffs failed to argue in a negligence case are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Alcoholic Beverages— alcoholic beverage license—intoxicated patron—driving after leaving licensed premises—injuries to others—no duties by licensee**

A restaurant business licensed to sell alcoholic beverages had no legal duty to take affirmative precautionary measures to prevent an intoxicated patron from operating a motor vehicle after the patron was served his final drink or to prevent an intoxicated patron from consuming alcoholic beverages on its premises after it knew he was intoxicated, and the licensed business thus could not be held liable on either of those theories of negligence for injuries received by persons in a vehicle struck by an automobile driven by the intoxicated patron after he left the restaurant, because: (1) the restaurant owner's adoption of the ABC Commission's Retail Guide as the restaurant's policy with respect to serving alcoholic beverages to patrons, which provided that a licensee should make sure that an intoxicated patron has a safe way home, was insufficient to create a legal duty on the part of the restaurant to prevent an intoxicated patron from driving after he was served his final drink; (2) an ABC regulation prohibiting a licensee from allowing an intoxicated person to consume alcoholic beverages on the licensed premises did not impose a legal duty on the restaurant business to prevent an intoxicated patron from consuming alcoholic beverages on the licensed premises by drinking the remaining portion of a drink he had previously purchased or by drinking a sip from another customer's drink; and (3) the restaurant business did not have a common law duty to take affirmative precautionary measurers to prevent an intoxicated patron from driving after the patron was served his final drink.

HALL v. TOREROS, II, INC.

[176 N.C. App. 309 (2006)]

Appeal by plaintiffs and defendant from judgment entered 1 April 2004 by Judge Abraham Penn Jones in Durham County Superior Court. Appeal by defendant from order entered 10 November 1999 by Judge Howard E. Manning, Jr. and from judgment entered 24 March 2000 and order entered 31 May 2000 by Judge James C. Spencer, Jr. in Durham County Superior Court. Heard in the Court of Appeals 18 October 2005.

> *Thomas, Ferguson & Mullins, L.L.P., by Jay H. Ferguson, for plaintiffs.*

> *Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Phillip J. Anthony, Christopher J. Derrenbacher, and Kathrine E. Downing, for defendant.*

JOHN, Judge.

This case arises out of a fatal automobile collision involving an intoxicated driver. However, our decision herein concerns neither the grave responsibility of that driver nor the crime of driving while impaired. Rather, we consider only whether the law of this jurisdiction recognizes a duty of care under the circumstances presented.

Plaintiffs Theresa D. Hall, Administratrix of the Estate of Michael H. Hall, and Theresa D. Hall, Individually ("plaintiffs"), appeal the 1 April 2004 judgment (denominated order) in favor of defendant Toreros, II, Inc. ("Toreros" or "defendant") entered by Judge Abraham Penn Jones (Judge Jones). For the reasons discussed herein, we affirm.

Pertinent procedural and factual background information includes the following: On 3 December 1997, William S. Terry ("Terry") was a patron at Toreros, a Durham, North Carolina, restaurant licensed and permitted to sell alcoholic beverages by the North Carolina Alcoholic Beverage Control Commission ("the Commission"). While at Toreros, Terry was served alcoholic beverages by bartender Lisa McBroom ("McBroom"), the only bartender on duty. At about 9:30 p.m., Terry left Toreros and walked to a nearby Food Lion. Some thirty minutes later, Terry returned to Toreros and drank the remaining portion of an alcoholic beverage he had left on the bar. When Terry ordered another alcoholic beverage, McBroom informed him that Toreros would be closing soon, that she had "called last call" while he was away, and that alcohol was no longer being served. After

taking a sip from another customer's alcoholic beverage, Terry asked McBroom whether he could buy that customer another beverage. McBroom reiterated she had "called last call," and refused to sell Terry another beverage.

At approximately 10:30 p.m., Terry left Toreros. While operating his automobile less than one mile away, Terry crossed the center line and collided with a motor vehicle driven by Michael Hall and in which plaintiff Theresa Hall was a passenger. Michael Hall died as a result of the collision and his wife Theresa sustained serious injuries.

On 11 May 1998, plaintiffs filed the instant suit against Terry (later dismissed as a defendant following mediation) and defendant, alleging the latter negligently furnished alcoholic beverages to Terry when it knew or should have known Terry was intoxicated. Plaintiffs subsequently amended their complaint to allege the following:

After furnishing a substantial amount of beer and liquor to Defendant Terry, Defendant Toreros knew Defendant Terry was intoxicated at the time he left Toreros, knew Defendant Terry was going to operate a motor vehicle in his intoxicated condition and failed to take any affirmative precautionary measures to prevent Defendant Terry from driving his vehicle or attempting to provide alternative transportation.

On 14 September 1999, defendant moved to dismiss the amended complaint. In an order entered 10 November 1999, Judge Howard E. Manning, Jr. (Judge Manning) denied the motion.

The case proceeded to trial the week of 28 February 2000. Following presentation of all the evidence, the jury was instructed to decide whether defendant was negligent in (i) "serving alcoholic beverage[s] to [] Terry, when it knew, or reasonably should have known that [he] was intoxicated at the time he was served," and/or (ii) "failing to take affirmative precautionary measures to prevent [] Terry from operating a motor vehicle when it knew or reasonably should have known he was intoxicated." On 9 March 2000, the jury returned a verdict finding no negligence by defendant with regard to the service of alcoholic beverages to Terry. However, the jury was unable to reach a verdict on the second issue. Judge James C. Spencer, Jr., (Judge Spencer) thereupon entered judgment (i) denying recovery to plaintiffs on the first count and (ii) declaring a mistrial regarding the issue of defendant's negligence in failing to take "affirmative precautionary measures."

**HALL v. TOREROS, II, INC.**

[176 N.C. App. 309 (2006)]

Defendant subsequently filed a "Motion For Judgment Pursuant to Rule 50." On 31 May 2000, Judge Spencer denied the motion and certified his decision for immediate appeal. Defendant thereafter appealed to this Court both the 10 November 1999 order of Judge Manning and Judge Spencer's 31 May 2000 order. In an unpublished opinion filed 18 December 2001, the appeals of plaintiffs and defendant were both dismissed as interlocutory. *Hall v. Toreros II, Inc.*, 147 N.C. App. 785, 559 S.E.2d 294 (2001) (unpublished).

Retrial was scheduled before Judge Jones during February and March 2004. Upon conclusion of the evidence, the jury was charged to determine whether defendant was negligent in (i) "failing to take affirmative precautionary measures to prevent [] Terry from operating a motor vehicle when it knew he was intoxicated," and/or (ii) "allowing [] Terry to consume an alcoholic beverage on its premises when it knew he was intoxicated." After answering each issue in the affirmative, the jury awarded plaintiffs a total of $1,241,600.00 in damages.

Defendant thereupon moved for judgment notwithstanding the verdict ("JNOV"). On 1 April 2004, Judge Jones allowed the motion in an order providing as follows:

> In that it appears to the Court in this case that there is no legal duty by a commercial provider of alcohol in North Carolina after service of the final drink by the defendant, the plaintiffs' claims for relief do not establish recognized legal claims.

> It is therefore ordered that the jury's verdict as to each issue contained on the verdict sheet is set aside and judgment is entered in favor of the Defendant and against the Plaintiffs as to each issue.

Plaintiffs appeal the JNOV, and defendant appeals the 10 November order of Judge Manning, the rulings of Judge Spencer and Judge Jones allowing the issue of defendant's failure to take affirmative measures to be submitted to the jury in the first and second trials, and the denials by Judge Jones of defendant's motions for directed verdict. Because we affirm the ruling of Judge Jones on defendant's JNOV motion, it is unnecessary to address defendant's appellate contentions.

[1] Initially, we note plaintiffs have failed to present argument upon six of their original seven assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignments of error are deemed

**HALL v. TOREROS, II, INC.**

[176 N.C. App. 309 (2006)]

abandoned. We therefore limit our consideration of plaintiffs' appeal to the issue of whether Judge Jones erred in allowing defendant's JNOV motion.

**[2]** A JNOV motion "seeks entry of judgment in accordance with [a] movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually returned by the jury." *Streeter v. Cotton,* 133 N.C. App. 80, 82, 514 S.E.2d 539, 541 (1999) (citations omitted). Since "ruling on such [a] motion is a question of law, and presents the same issue for appellate review as a motion for directed verdict," *id.* (citations omitted), "[i]t follows . . . that '[t]he propriety of granting a motion for [JNOV] is determined by the same considerations as that of a motion for directed verdict.' " *Bank v. Burnette,* 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979) (citation omitted).

"Ordinarily, [JNOV] is not proper unless it appears as a matter of law that [] recovery simply cannot be had by plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Taylor v. Walker,* 320 N.C. 729, 734, 360 S.E.2d 796, 799 (1987) (citation omitted). "The heavy burden carried by the movant is particularly significant in cases . . . in which the principal issues are negligence and contributory negligence. Only in exceptional cases is it proper to enter a directed verdict or a [JNOV] against a plaintiff in a negligence case." *Id.* (citations omitted). However, one such "exceptional case[]" exists where the plaintiff is unable to offer evidence sufficient to establish each essential element of negligence. *Oliver v. Royall,* 36 N.C. App. 239, 242, 243 S.E.2d 436, 439 (1978).

This Court has previously held that

> [n]egligence is not presumed simply because an accident has occurred. In order to establish a *prima facie* case of negligence, plaintiff must offer evidence that defendant owed him a duty of care, that defendant breached that duty, and that defendant's breach was the actual and proximate cause of plaintiff's injury. If plaintiff fails to show any one of these elements, it is proper for the court to enter a directed verdict in favor of defendant.

*Cowan v. Laughridge Construction Co.,* 57 N.C. App. 321, 323-24, 291 S.E.2d 287, 289 (1982) (citation omitted).

In the case *sub judice,* defendant successfully argued to Judge Jones that JNOV was appropriate because of the failure of plaintiffs' evidence on the duty element of negligence. According to defendant, North Carolina jurisprudence places no legal duty upon a commercial

vendor of alcoholic beverages which, having determined a patron is not intoxicated at the time of service, has served said patron his or her final drink. Upon careful consideration of pertinent case and statutory law, we affirm the decision of Judge Jones.

In examining how a duty to use reasonable care arises, this Court has cited the following provisions of The Restatement (Second) of Torts:

How Standard of Conduct is Determined:

The standard of conduct of a reasonable man may be

(a)  established by a legislative enactment or administrative regulation which so provides, or

(b)  adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

(c)  established by judicial decision, or

(d)  applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision.

*Hutchens v. Hankins*, 63 N.C. App. 1, 13-14, 303 S.E.2d 584, 592 (quoting Restatement (Second) of Torts § 285), *disc. review denied*, 309 N.C. 191, 305 S.E.2d 734 (1983).

With respect to the sale of alcoholic beverages by ABC licensed or permitted businesses, N.C.G.S. § 18B-305(a) (2003) provides that it is "unlawful for a permittee or his employee . . . to knowingly sell or give alcoholic beverages to any person who is intoxicated." In *Hutchens,* after examining the general purposes of the statute, this Court "adopt[ed] the requirements of G.S. 18A-34 [now N.C.G.S. § 18B-305] as the minimum standard of conduct" for businesses having a license or permit to sell alcoholic beverages, and held that violation of the statute "can give rise to an action for negligence against the licensee [or permittee] by a member of the public who has been injured by the intoxicated customer." 63 N.C. App. at 16, 303 S.E.2d at 593; *see also Estate of Mullis v. Monroe Oil Co.*, 349 N.C. 196, 202, 505 S.E.2d 131, 135 (1998) (common law negligence claim may be maintained against commercial vendor based upon sale of alcohol to underage individual); *Hart v. Ivey*, 332 N.C. 299, 305, 420 S.E.2d 174, 178 (1992) (common law negligence claim may be maintained against social host based upon service of alcohol to intoxicated individual).

However, in order to prevail in such an action, a plaintiff whose injury was proximately caused by a patron must also allege and prove "(1) that the patron was intoxicated and (2) that the licensee or permittee knew or should have known that the patron was in an intoxicated condition at the time he or she was served." *Hutchens*, 63 N.C. App. at 18, 303 S.E.2d at 595.

The jury verdict at the first trial, not challenged by plaintiffs in the instant appeal, determined that defendant did not "serv[e] alcoholic beverage[s] to [] Terry, when it knew, or reasonably should have known that [he] was intoxicated at the time he was served." Defendant was thus exonerated of violating the legal duty established in *Hutchens* and the propriety of the jury's decision in that regard is not before us. As Terry was not an underage individual, and as defendant was neither a "social host" nor (according to the first jury verdict) did it serve alcohol to Terry when it knew or should have known he was intoxicated, the legal duties established in *Hart* and *Mullis* are likewise not implicated herein.

Plaintiffs achieved a favorable jury verdict at the second trial, contending defendant was negligent in knowing Terry was intoxicated but failing to take affirmative measures to prevent him from operating a motor vehicle, and also in allowing him to consume an alcoholic beverage on its premises while intoxicated. Confronted with Judge Jones' entry of judgment against them notwithstanding the jury verdict, plaintiffs on appeal posit three theories of liability as sustaining the verdict. Plaintiffs maintain defendant's company policy, an administrative regulation of the Commission, and "general common law principles" support submission to the jury of plaintiffs' two contentions of defendant's negligence. We examine each assertion *ad seriatim*.

### Company Policy

At trial, plaintiffs presented evidence tending to show defendant trained its employees to comply with the Commission's Retail Guide ("the Guide") when serving alcoholic beverages to customers. In responses to interrogatories from plaintiffs, defendant acknowledged it "maintain[ed]" a copy of the Guide in "the bar area" and used the Guide to "train employees about the service of alcohol[,]" "train employees in identifying and dealing with intoxicated customers[,]" and "discourage driving an automobile after drinking[.]" On direct examination, McBroom testified she was instructed by defendant to follow the Guide when serving alcoholic beverages, that she

"[a]bsolutely" followed defendant's "company's policies, the safety policies as far as the ABC Retail Guide[,]" and that the Guide and defendant's company policy were aimed at ensuring "not just the [safety of defendant's] customers but the safety of the general public in that the customer is then allowed to leave intoxicated and drive a car[.]" McBroom added that, according to the Guide, after a customer has become intoxicated, a bartender is "required to take their drink away. To make sure they have a safe way home; and to make sure that they will be fine."

Plaintiffs, citing *Peal v. Smith*, 115 N.C. App. 225, 230, 444 S.E.2d 673, 677 (1994), *aff'd per curiam*, 340 N.C. 352, 457 S.E.2d 599 (1995), *Klassette v. Mecklenburg County Area Mental Health*, 88 N.C. App. 495, 501, 364 S.E.2d 179, 183 (1988), *Blanton v. Moses H. Cone Hosp.*, 319 N.C. 372, 376, 354 S.E.2d 455, 458 (1987), and *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 521, 361 S.E.2d 909, 915 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988), maintain adoption by defendant of the Guide as its company policy "alone is sufficient for [a] finding of the legal duties submitted to the jury, found by the jury, but rejected by Judge Jones." We believe plaintiffs misperceive the purport of the cases cited.

Although recognizing that company policies "represent some evidence of a reasonably prudent standard of care," *Klassette*, 88 N.C. App. at 501, 364 S.E.2d at 183, this Court has consistently held that "voluntary written policies and procedures do not themselves establish a *per se* standard of due care . . . ." *Id.* (citations omitted); *accord Norris v. Zambito*, 135 N.C. App. 288, 295, 520 S.E.2d 113, 118 (1999) ("A violation of voluntarily adopted safety policies is merely some evidence of negligence and does not conclusively establish negligence."); *see also Wilson v. Hardware, Inc.*, 259 N.C. 660, 666, 131 S.E.2d 501, 505 (1963) (voluntary adoption of safety code "some evidence that a reasonably prudent person would adhere to the requirements of the code"); *Slade v. Board of Education*, 10 N.C. App. 287, 296, 178 S.E.2d 316, 322 (voluntary adoption of school bus driver training handbook as guide for protection of passengers and public admissible as "some evidence [] a reasonably prudent person would adhere to [its] requirements"), *cert. denied*, 278 N.C. 104, 179 S.E.2d 453 (1971).

In addition, defendant correctly interjects that the " 'existence of a legal duty' constitutes a threshold requirement for a negligence action," and that

[i]n each of the cases cited by Plaintiff, the safety or company rules adopted by the defendants served as a method by which the defendants could comply with the underlying legal duty already existing under the law. The mere adoption of the rules was irrelevant to the question of whether a legal duty was owed. . . . [T]he legal duty already existed, and the failure to follow an adopted rule, policy, or procedure was merely some evidence of a breach of that legal duty.

In short, we hold defendant's adoption of the Guide merely represents "some evidence" of its alleged negligence, *see Norris*, 135 N.C. App. at 295, 520 S.E.2d at 118, in the event a duty of care is present, *see* Charles E. Daye and Mark W. Morris, *North Carolina Law of Torts* § 16.61.2, at 190 (2d ed. 1999) ("Where it is determined that there is no duty, . . . the question of negligence is never reached."). To rule otherwise would serve only to discourage, indeed penalize, voluntary assumption or self-imposition of safety standards by commercial enterprises, thereby increasing the risk of danger to their customers and the public. Accordingly, we reject plaintiffs' assertion that adoption of the Guide by Toreros as company policy, standing "alone[,] [wa]s sufficient for [a] finding of the legal duties submitted to the jury[.]"

### Administrative Regulations

4 N.C.A.C. 2S.0206 provides that "[n]o permittee or his employees shall allow an intoxicated person to consume alcoholic beverages on his licensed premises." At trial, essentially uncontradicted evidence indicated that upon returning from his visit to Food Lion, Terry drank the remaining portion of the alcoholic beverage he had previously purchased and took a sip from another customer's alcoholic beverage. Plaintiffs contend 4 N.C.A.C. 2S.0206 "establishes a legal duty [of care]" upon defendant and that "Judge Jones erred in setting aside [that portion of the affirmative jury] verdict" referencing violation of the regulation based upon his determination "that this is not a valid legal duty of a commercial provider of alcohol in North Carolina." Our research dictates upholding the ruling of Judge Jones in this regard.

As noted above, courts " 'may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation . . . .' " *Hutchens*, 63 N.C. App. at 14, 303 S.E.2d at 592 (quoting Restatement (Second) of Torts § 286); *see, e.g., Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 341-43, 88

S.E.2d 333, 339-40 (1955) (regulations of National Electrical Code, as promulgated by North Carolina Building Code, have force and effect of law in North Carolina). Thus, "a safety regulation having the force and effect of a statute creates a specific duty for the protection of others," *Baldwin v. GTE South, Inc.*, 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994) (citations omitted), and "[a] member of the class intend to be protected by a . . . regulation who suffers harm proximately caused by its violation has a claim against the violator," *id.* (citations omitted). Indeed, "when a statute [or regulation] imposes a duty on a person for the protection of others, it is a public safety statute and a violation of such a statute is negligence per se." *Gregory v. Kilbride*, 150 N.C. App. 601, 610, 565 S.E.2d 685, 692 (2002) (citations omitted), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 365 (2003).

However, " 'not every statute [or regulation] purporting to have generalized safety implications may be interpreted to automatically result in tort liability for its violation.' " *Williams v. City of Durham*, 123 N.C. App. 595, 598, 473 S.E.2d 665, 667 (1996) (citation omitted). Rather, in order for the requirements of an administrative regulation to be adopted as a standard of care, the purpose of the regulation must be exclusively or in part:

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Hutchens*, 63 N.C. App. at 14, 303 S.E.2d at 592 (quoting Restatement (Second) of Torts § 286). In order "[t]o determine whether plaintiff is a member of the class protected by the regulation, . . . its purpose" must be examined. *Baldwin*, 335 N.C. at 547, 439 S.E.2d at 109; *see also* Restatement (Second) of Torts § 286, Comment d. (where court adopts a standard of conduct provided by regulation, "it is acting to further the general purpose which it finds in the legislation").

Additionally and most importantly, " '[w]hatever force and effect a rule or regulation has is derived entirely from the statute under which it is enacted.' " *Swaney v. Steel Co.*, 259 N.C. 531, 542, 131

S.E.2d 601, 609 (1963) (citation omitted). Indeed, "[a]n administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." *Comr. of Insurance v. Insurance Co.*, 28 N.C. App. 7, 11, 220 S.E.2d 409, 412 (1975) (citation omitted). Finally, N.C.G.S. § 150B-19(3) (2003) provides that an agency is prohibited from adopting a rule or regulation which "[i]mposes criminal liability or a civil penalty for an act or omission, including the violation of a rule, unless a law specifically authorizes the agency to do so or a law declares that violation of the rule is a criminal offense or is grounds for a civil penalty."

To discover the purpose of 4 N.C.A.C. 2S.0206, *see Hutchens*, 63 N.C. App. at 14, 303 S.E.2d at 592; *Baldwin*, 335 N.C. at 547, 439 S.E.2d at 109, and determine what force and effect it may be accorded, *see Swaney*, 259 N.C. at 542, 131 S.E.2d at 609; *Insurance Co.*, 28 N.C. App. at 11, 220 S.E.2d at 412; N.C.G.S. § 150B-19(3), therefore, we turn to an examination of the statutory scheme under which 4 N.C.A.C. 2S.0206 was adopted.

Although the Commission in its regulations describes "[t]he purpose of the Alcoholic Beverage Control System [as being] to provide regulation and control of the . . . consumption of alcoholic beverages to serve the public welfare," 4 N.C.A.C. 2R.0101; *see also Boyd v. Allen*, 246 N.C. 150, 154, 97 S.E.2d 864, 867 (1957) ("the business of dealing in or with intoxicating liquors is [a right] . . . . affecting the public health, morals, safety and welfare"), 4 N.C.A.C. 2S.0206 and other administrative regulations of the Commission are promulgated pursuant to N.C.G.S. § 18B-207. Under this section, the Commission is limited to "adopt[ing], amend[ing], and repeal[ing] rules to carry out *the provisions of* [Chapter 18B]." N.C.G.S. § 18B-207 (2003) (emphasis added).

Unquestionably, Chapter 18B provides "administrative" penalties for violation of the Commission's rules, *see* N.C.G.S. § 18B-104 (2003), and also authorizes aggrieved parties to file suit against a permittee for damages resulting from the sale or furnishing of alcoholic beverages to an underage individual, *see* N.C.G.S. § 18B-121 (2003). By contrast, however, Chapter 18B contains no express provisions regarding the consumption of alcohol by intoxicated persons.

Further, while Chapter 18B earlier made it unlawful for "a permittee or his agent or employee to knowingly allow . . . on his licensed premises . . . [a]ny violation of the ABC laws" (defined to

include "rules issued by the Commission under the authority" of Chapter 18B), *see* N.C.G.S. § 18B-1005(a)(1) (1981), this section was amended shortly thereafter, and years before the collision at issue herein, to reflect its current form, which prohibits simply "[a]ny violation of this Chapter." N.C.G.S. § 18B-1005(a)(1) (2003).

Finally, although the statutorily stated purpose of Chapter 18B includes in part the "establish[ment of] a uniform system of control over the . . . consumption . . . of alcoholic beverages in North Carolina," N.C.G.S. § 18B-100 (2003), our Supreme Court has previously stated that

> [t]here is no express purpose of protecting the public from intoxicated persons in the statute except in that portion of the chapter known as the Dram Shop Act, N.C.G.S. § 18B-120 *et seq.* . . . Where a statute specifies the acts to which it applies, an intention not to include others within its operation may be inferred.

*Hart,* 332 N.C. at 304, 420 S.E.2d at 177 (citation omitted).

In this latter context, we also note the parties cite no occasion whereupon the General Assembly has considered legislation making it illegal for a commercial vendor of alcoholic beverages to allow consumption of such beverages on its premises by an intoxicated person. This is particularly striking in light of the plenary occasions when related topics have drawn the interest of the General Assembly, including the multiple amendments of Chapter 18B to enact and rewrite 1) the Dram Shop Act, N.C.G.S. § 18B-120 *et seq.,* thereby allowing claims against ABC licensees resulting from the sale of alcoholic beverages to minors, 2) N.C.G.S. § 18B-302, prohibiting the sale of alcoholic beverages to minors, 3) N.C.G.S. § 18B-305, prohibiting the sale or furnishing of alcoholic beverages to an intoxicated person, and 4) N.C.G.S. § 18B-1005, prohibiting certain "kinds of conduct" on licensed premises.

Interestingly, our research reveals the Institute of Government (now School of Government) in 1966, acting at the request and under the direction of the State Board of Alcoholic Control, recommended the amendment of Chapter 18 (now Chapter 18B) to include prohibiting a licensee from "[p]ermit[ing] any intoxicated person to consume intoxicating liquor on the licensed premises," a proposed revision "derived from State ABC Board Regulation No. 30." Loeb, Ben F., Jr., *Regulation of Intoxicating Liquors—A Proposed Revision of Chapter 18, General Statutes of North Carolina,* pp. 143-44 (North

Carolina Institute of Government, Dec. 1966). While it is unclear whether the Institute of Government recommendation ever came to the attention of the General Assembly, that body in any event enacted no such amendment when subsequently rewriting Chapter 18 in 1971 or at any later time.

To summarize, therefore, had the General Assembly intended to prohibit by statute consumption of alcoholic beverages by intoxicated persons on the premises of an ABC licensee or permittee (and by implication thereby to impose a legal duty of care), it easily could and would have done so. *See In re Appeal of Philip Morris U.S.A.*, 335 N.C. 227, 230, 436 S.E.2d 828, 831 (1993) (having expressly prohibited contingent fees in a number of other settings where it deemed them to be inappropriate, the General Assembly would have expressly prohibited them in N.C.G.S. § 105-299 had it intended such a prohibition), *cert. denied*, 512 U.S. 1228, 129 L. Ed. 2d 850 (1994); *City of Raleigh v. College Campus Apartments, Inc.*, 94 N.C. App. 280, 284, 380 S.E.2d 163, 166 (1989) ("If the General Assembly had intended to limit . . . application [of N.C.R. Civ. P. 41(d)] to cases where the defendant was the same in both suits, it could have done so. There is simply no basis for judicially adding a requirement the General Assembly intended to leave out when the statute is clear[ly] unambiguous."), *aff'd per curiam*, 326 N.C. 360, 388 S.E.2d 768 (1990).

Significantly, moreover, .N.C.G.S. § 18B-300, governing "Purchase, possession and consumption of malt beverages and unfortified wine," directs that

[e]xcept as otherwise provided in [Chapter 18B], the purchase, consumption, and possession of malt beverages and unfortified wine by individuals 21 years old and older for their own use is permitted without restriction.

N.C.G.S. § 18B-300(a) (2003).

In addition, the provisions of Chapter 18B in general and the Dram Shop Act in particular were enacted at least in part in derogation of the common law principle that it was not a tort either to sell or furnish alcohol to an able-bodied person. *See Hutchens*, 63 N.C. App. at 5, 303 S.E.2d at 587 (citing 48 C.J.S., Intoxicating Liquors, § 430 (1947); 45 Am. Jur. 2d, Intoxicating Liquor, § 553 (1969); 97 A.L.R. 3d 528, § 2 (1980)). It is well settled that "[s]tatutes in derogation of the common law . . . must be strictly construed." *Barnard v.*

*Rowland,* 132 N.C. App. 416, 424, 512 S.E.2d 458, 464 (1999) (citation omitted). Accordingly, "taking [the] words [of Chapter 18B] in their natural and ordinary meaning," *id.* (quotations and citations omitted), "everything [must] be excluded from the operation of [Chapter 18B] which does not come within the scope of the language used" in the Chapter, *id.* (quotations and citations omitted).

In light of the foregoing, we are not persuaded 4 N.C.A.C. 2S.0206 constitutes "a safety regulation having the force and effect of a statute." *See Baldwin,* 335 N.C. at 546, 439 S.E.2d at 109. As discussed above, the rules and regulations of the Commission must "carry out the provisions of [Chapter 18B]." N.C.G.S. § 18B-207. However, the requirements of 4 N.C.A.C. 2S.0206 do not "carry out [any] provision[] of [Chapter 18B]," *see* N.C.G.S. § 18B-207, aimed at preventing the consumption of alcoholic beverages by intoxicated individuals in that no statutory provision addresses the subject. Nor does the regulatory requirement "carry out [any] provisions," *id.*, of the Dram Shop Act, which our Supreme Court has held is limited to "protecting the public from" the hazards created by underage drinkers, *see Hart,* 332 N.C. at 304, 420 S.E.2d at 177.

In addition, although 4 N.C.A.C. 2S.0206 professedly was enacted to "serve the public welfare," *see* 4 N.C.A.C. 2R.0101; *Boyd,* 246 N.C. at 154, 97 S.E.2d at 867, neither the regulation itself nor any provision of Chapter 18B impose civil liability for violation of the regulation. *See* N.C.G.S. § 150B-19(3). Instead, as authorized by 14A N.C.A.C. 8H, Alcohol Law Enforcement officers may issue only an oral warning, *see* 14A N.C.A.C. 8H.0402(c), a written warning, *see* 14A N.C.A.C. 8H.0403(c), or a violation report, *see* 14A N.C.A.C. 8H.0404(c), as a penalty for a licensee's or permittee's failure to comply with 4 N.C.A.C. 2S.0206. The Commission's power upon "violation of the ABC laws," in turn, is limited to the "administrative penalties" of ABC permit suspension or revocation and/or imposition of fines up to $1,000.00. *See* N.C.G.S. § 18B-104 (2003). Accordingly, this Court "is under no compulsion to accept [4 N.C.A.C. 2S.0206] as defining any standard of conduct for purposes of a tort action." Restatement (Second) of Torts § 286, Comment d.

Indeed, were we to hold, as plaintiffs urge, that violation of 4 N.C.A.C. 2S.0206 without qualification constitutes negligence *per se*, it would require a trial court to charge the jury that a commercial vendor's allowing an intoxicated individual to consume *any* amount of alcohol, even a sip from another customer's beverage, constitutes

negligence *per se*. In light of the factors set out herein, "[w]e do not believe the General Assembly intended this result." *Hart*, 332 N.C. at 304, 420 S.E.2d at 177 (concluding violation of N.C.G.S. § 18B-302, prohibiting the sale of alcohol to underage individuals, is not negligence *per se*). Therefore, we hold Judge Jones did not err in granting JNOV with reference to plaintiffs' contention that 4 N.C.A.C. 2S.0206 imposed a legal duty upon defendant to prevent Terry from consuming alcohol on its premises after it knew he was intoxicated.

### General Common Law Principles

Lastly, plaintiffs claim "general common law principles of negligence" also impose a duty of care upon defendant. Plaintiffs contend that "the service of alcohol is extremely risky warranting a substantial legal duty upon commercial vendors of alcohol" beyond that previously recognized by our courts, including the taking of significant affirmative precautionary measures to forestall intoxicated customers from operating motor vehicles. As applied to the case under consideration, our review of the pertinent authorities compels us to conclude otherwise.

In asserting the common law as a source of a duty of care upon defendant, plaintiffs in their appellate brief also argue, at least by implication, that the common law imposes a duty upon defendant to prevent intoxicated customers from consuming alcoholic beverages on its premises. At trial, however, plaintiffs claimed defendant's duty to prevent intoxicated persons from consuming alcoholic beverages arose solely from the provisions of 4 N.C.A.C. 2S.0206, and the jury was instructed accordingly. As plaintiffs may not "assert a contradictory position or swap horses between courts in order to get a better mount" on appeal, *see Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 103 (2002) (per curiam) (citations and quotation marks omitted); *see also McDowell v. Smathers Super Market*, 70 N.C. App. 775, 778, 321 S.E.2d 7, 9 (1984) ("the cast of a case on appeal is irretrievably fixed in the trial court"), *disc. review denied*, 312 N.C. 797, 325 S.E.2d 631 (1985), we address only the contention, presented both to this Court and the trial court, regarding affirmative precautionary measures to prevent intoxicated patrons from operating motor vehicles, *see Grissom v. Dept. of Revenue*, 34 N.C. App. 381, 383, 238 S.E.2d 311, 312-13 (1977) ("An appeal has to follow the theory of the trial, and where a cause is heard on one theory at trial, appellant cannot switch to a different theory on appeal."), *disc. review denied*, 294 N.C. 183, 241 S.E.2d 517 (1978).

HALL v. TOREROS, II, INC.

[176 N.C. App. 309 (2006)]

"Under the common law rule it was not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and no cause of action existed against one furnishing liquor in favor of those injured by the intoxication of the person so furnished." *Hutchens*, 63 N.C. App. at 5, 303 S.E.2d at 587. As previously noted, however, this Court in *Hutchens* adopted the requirements of N.C.G.S. § 18A-34 (no ABC licensee or permittee shall "upon the licensed premises . . . [k]nowingly sell [alcoholic] beverages to any person while such person is in an intoxicated condition") (now N.C.G.S. § 18B-305) as "the minimum standard of conduct for" licensed or permitted vendors of alcohol, *id.* at 16, 303 S.E.2d at 593. We thereupon held that "persons injured by an intoxicated tavern customer [maintain] the right to recover from the tavern that provided liquor to the customer upon proof of the tavern owner's negligence." *Id.* at 12, 303 S.E.2d at 591.

Similarly, in *Hart*, our Supreme Court reviewed North Carolina's "principles of negligence," 332 N.C. at 304, 420 S.E.2d at 177, and determined a social host is "under a duty to the people who travel on the public highways not to serve alcohol to an intoxicated individual who [i]s known to be driving." *Id.* at 305, 420 S.E.2d at 178. In *Mullis*, the Court applied *Hart* to a commercial vendor of alcohol, concluding "a common law cause of action may be maintained for the negligent sale of alcohol to an underage person if all common law negligence elements are satisfied[.]" 349 N.C. at 202-03, 505 S.E.2d at 135.

According to the *Hart* and *Mullis* decisions, neither case involved recognition of a new cause of action. *See Hart*, 332 N.C. at 305-06, 420 S.E.2d at 178; *Mullis*, 349 N.C. at 202, 505 S.E.2d at 135. In *Mullis*, for example, the Court stated it was "merely allow[ing] 'established negligence principles' to be applied to the facts of [the] plaintiff's case." 349 N.C. at 202, 505 S.E.2d at 135. Both decisions thereby reflected the intent of the General Assembly. *See* N.C.G.S. § 18B-128 (2003) ("The creation of any claim for relief by [the Dram Shop Act] may not be interpreted to abrogate or abridge any claims for relief under the common law[.]"); *see also* 1983 N.C. Sess. Laws ch. 435, s. 41.1 ("The original inclusion and ultimate deletion in the course of passing this [Dram Shop Act] of statutory liability for certain persons who sell or furnish alcoholic beverages to intoxicated persons does not reflect any legislative intent one way or the other with respect to the issue of civil liability for negligence by persons who sell or furnish those beverages to such persons.").

Plaintiffs concede the common law duties recognized in *Hutchens* and *Mullis* are limited to factual situations not extant in

the instant appeal. Nonetheless, plaintiffs urge this Court to reverse the JNOV entered by Judge Jones. Plaintiffs argue that defendant, as a commercial vendor of alcoholic beverages, owed Michael and Theresa Hall a common law duty of care. According to plaintiffs, the common law obligated defendant to undertake affirmative precautionary measures to prevent Terry from operating a motor vehicle upon defendant's learning at some undefined point following service of Terry's final drink that he had become intoxicated. Plaintiffs advance this assertion in the face of an unchallenged jury verdict finding defendant did not "serve alcoholic beverage[s] to [] Terry when it knew, or reasonably should have known that [he] was intoxicated at [any] time he was served." Based upon thorough research and careful consideration, we conclude the ruling of Judge Jones should be affirmed.

"In general, there is no duty to prevent harm to another by the conduct of a third person." *Hedrick v. Rains*, 121 N.C 344 N.C. 729, 477 S.E.2d 171 (1996). However, an exception to this rule exists where

> there is a special relationship between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct or a special relationship between the defendant and the injured party . . . gives the injured party a right to protection.

*Id.* (citations omitted). "In such event, there is a duty 'upon the actor to control the third person's conduct,' and 'to guard other persons against his dangerous propensities.'" *King v. Durham County Mental Health Authority*, 113 N.C. App. 341, 345-46, 439 S.E.2d 771, 774 (citations omitted), *disc. review denied*, 336 N.C. 316, 445 S.E.2d 396 (1994).

In the present case, we do not believe the relationship between defendant and Terry falls within those categories previously recognized by our courts to impose a special duty of care.

> Some examples of such recognized special relationships include: (1) parent-child; (2) master-servant; (3) landowner-licensee; (4) custodian-prisoner; and (5) institution-involuntarily committed mental patient. In each example, "the chief factors justifying imposition of liability are 1) the ability to control the person and 2) knowledge of the person's propensity for violence."

*Id.* at 346, 439 S.E.2d at 774 (citations omitted).

**HALL v. TOREROS, II, INC.**

[176 N.C. App. 309 (2006)]

Here, however, the relationship between defendant and Terry was one of business-business invitee Although defendant was in control of Terry's purchase of alcoholic beverages upon its premises, *see* N.C.G.S. § 18B-305(b) ("Any person authorized to sell alcoholic beverages under this Chapter may, in his discretion, refuse to sell to anyone."), defendant nonetheless was accorded no authority by virtue of the business-business invitee relationship to control Terry's decision when to leave the premises, his method of leaving the premises, or his actions once he had left the premises. In short, the relationship between defendant and Terry lacks both a "custodial" nature and an "ability to control," *see id.*, factors inherent in those relationships imposing a special duty.

As to the relationship between defendant and Michael and Theresa Hall, this Court has previously observed that

[w]hether or not a party has placed himself in such a relation with another so that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that the other will not be injured calls for the balancing of various factors: (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*Leasing Corp. v. Miller*, 45 N.C. App. 400, 406-07, 263 S.E.2d 313, 318 (citations omitted), *disc. review denied*, 300 N.C. 374, 267 S.E.2d 685 (1980); see also W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 53, at 359 n.24 (5th ed. 1984) (identifying "[v]arious [nonexclusive] factors . . . given conscious or unconscious weight" in considering existence of duty, including the "extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach").

In the case *sub judice*, plaintiffs without question suffered grave and serious harm as a result of the motor vehicle collision involving Terry. In addition, this Court has previously stated that

a jury could . . . reasonably find that [an intoxicated customer's] negligent operation of his motor vehicle after leaving the defendants' tavern was a normal incident of the risk they created [by the sale or furnishing of an alcoholic beverage to that intoxicated

customer], or an event which they could reasonably have fore-
seen, and that consequently there was no effective breach in the
chain of causation.

*Hutchens,* 63 N.C. App. at 11, 303 S.E.2d at 591 (citation omitted).

Nevertheless, plaintiffs are unable to cite a single case from any
jurisdiction in which the duty of care has been extended to impose
common law liability upon an alcohol licensee or permittee solely for
failing to take affirmative precautionary measures to prevent an
intoxicated person from operating a motor vehicle. By contrast, our
research reveals that, in generally similar circumstances, courts in.
multiple states have refused to do so. *See, e.g., Sports, Inc. v. Gilbert,*
431 N.E.2d 534, 538 (In. Ct. App. 1982) (automobile racetrack under
no duty to prevent intoxicated third-party from leaving premises, not-
ing "[w]e know of no case from any jurisdiction which imposes a duty
to control a third person when no right to control exists. The right to
control another person's actions is essential to the imposition of this
duty"); *Loeffler v. Sal & Sam's Restaurant,* 541 So.2d 937, 939 (La. Ct.
App. 1989) (no allegation of "an affirmative act sufficient to violate
the duty owed by bar owners" where plaintiff asserted bar was negli-
gent in allowing intoxicated patron to drive "after he had become
intoxicated upon their premises and to their profit"); *Vale v.
Yawarski,* 357 N.Y.S.2d 791, 795 (N.Y. Sup. Ct. 1974) (tavern owner
had no duty to restrain obviously intoxicated patron from leaving
premises, stating "[t]his court . . . finds no basis in the law of New
York or elsewhere for the imposition of" a duty to "determine
whether each departing guest is an automobile driver and fit or unfit
to drive safely and then, if need be, take proper and lawful steps to
prevent him from driving"); *Gustafson v. Matthews,* 441 N.E.2d 388,
390-91 (Ill. App. Ct. 1982) (tavern owed no duty to passengers in
intoxicated patron's vehicle to prevent him from operating the vehi-
cle, commenting "[t]his duty would . . . apply to all businesses that
maintain parking lots and would require them to evaluate the behav-
ior of their customers to determine whether they have the capacity to
drive safely. This is an unjustifiably burdensome responsibility and
should not be imposed in the absence of some further relationship
between the customer and the business"); *Nolan v. Morelli,* 226 A.2d
383, 388-89 (Conn. 1967) (tavern had no common law duty to prevent
intoxicated patron from operating motor vehicle, observing "[i]f it is
assumed . . . that the operation of the car by the decedent while he
was intoxicated was the immediate. cause of death, it is of course
unfortunate, from the vantage point of hindsight, that the defendants

did not contrive to dissuade or prevent him from operating his car. But the plaintiff has pointed to no common-law duty resting on these defendants, as sellers, proprietors or otherwise, to go to that extent, or otherwise to guard against injuries sustained at unknown distances from the defendants' premises and at places and under circumstances wholly outside the defendants' knowledge or control"); *see also West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 552 (Tenn. 2005) (while convenience store employees owe "a duty of reasonable care to persons on the roadways . . . not to sell gasoline to a person whom the employee knows (or reasonably ought to know) to be intoxicated and to be the driver of [a] motor vehicle," such employees do not have a duty to "physically restrain or otherwise prevent intoxicated persons from driving"); *Armstrong v. State*, 537 S.E.2d 147, 149 (Ga. Ct. App. 2000) (affirming defendant's conviction for false imprisonment of intoxicated victim and concluding trial court did not err by instructing the jury that "Georgia law sets no mandate with regard to the constraint of an impaired individual" because although "[Georgia's Dram Shop law] sets forth a basis for civil liability where an alcohol provider knowingly continues to serve alcohol to an intoxicated person[,] . . . nothing in that statute or any other provision of Georgia law mandates that a provider of alcoholic beverages must prevent an intoxicated person from driving").

Similarly, in the current case there is no indication defendant "intended to affect" plaintiffs by allowing Terry to leave its premises, *see Leasing Corp.*, 45 N.C. App. at 406, 263 S.E.2d at 318, and the "the connection between [defendant's] conduct and the injury" to plaintiffs, although arguably "proximate," *see Hutchens*, 63 N.C. App. at 11, 303 S.E.2d at 591, contains several intervening causes which diminish the "closeness" thereof, *see Leasing Corp.*, 45 N.C. App. at 406, 263 S.E.2d at 318. Further, although the Dram Shop Act may represent a legislative effort to "prevent[] future harm" associated with drunken driving, *see id.* at 407, 263 S.E.2d at 318, neither the General Assembly nor our courts have previously placed liability upon an ABC licensee or permittee for failing to take affirmative precautionary measures to prevent an intoxicated patron from operating a motor vehicle.

In short, it appears that requiring defendant under the circumstances of this case to take affirmative measures to prevent Terry from leaving its premises and operating a motor vehicle implicates consideration of factors embedded not in the common law, but rather within the "policy-making" domain of the General Assembly, *see Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169-70, 594 S.E.2d 1, 8-9 (2004)

## HALL v. TOREROS, II, INC.

[176 N.C. App. 309 (2006)]

("The General Assembly is the 'policy-making agency' because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws. This Court has continually acknowledged that, unlike the judiciary, the General Assembly is well equipped to weigh all the factors surrounding a particular problem, balance competing interests, provide an appropriate forum for a full and open debate, and address all of the issues at one time." (citations and quotation marks omitted)). To date, no legislative enactment has been forthcoming, and, without question, we may not usurp the constitutional prerogative of the General Assembly. *See D & W, Inc. v. Charlotte*, 268 N.C. 577, 589, 151 S.E.2d 241, 250 (1966) (" '[The constitutional duty] is not ours to make the law. That is legislative. It is ours to interpret the law as the legislature enacts it.' " (citation omitted)); *see also Jarman v. Deason*, 173 N.C. App. 297, 299, 618 S.E.2d 776, 778 (2005) ("It is not the province of this Court to superimpose our own determination of what North Carolina's public policy should be over that deemed appropriate by our General Assembly.").

Based upon the foregoing, we are not persuaded that there existed any "special relationship" which imposed upon defendant a common law duty to protect Michael and Theresa Hall from Terry's actions following his departure from the premises of defendant. Therefore, under the circumstances of the case *sub judice*, we conclude Judge Jones did not err in his entry of JNOV.

Prior to closing, it is appropriate to acknowledge that the "legalese" in which this opinion is necessarily cast may falsely suggest insensitivity to the poignant circumstances upon which this appeal was founded. Without any fault on their part, a young father was tragically killed and his wife grievously injured in a motor vehicle collision with an intoxicated driver. While acutely aware of the loss and harm endured by the plaintiffs and while similarly cognizant of the carnage which drunken drivers wreak upon the roadways of this state and nation, *see Bullins v. Schmidt*, 322 N.C. 580, 584, 369 S.E.2d 601, 604 (1988) ("With approximately fifty thousand persons killed on the nation's public highways each year (1640 in North Carolina), drunken drivers are a deadly menace to innocent persons."), we have been obligated in this matter, as in any, to perform our duty as judges dispassionately and in compliance with our constitutional mandate, that is, to rule upon questions of law and not to legislate. *See Underwood v. Howland, Comr. of Motor Vehicles*, 1 N.C. App. 560, 563, 162 S.E.2d 124, 126 ("It is our duty to adjudicate, not legislate; to interpret the law as written, not as we would have

WILLIAMS v. CSX TRANSP., INC.

[176 N.C. App. 330 (2006)]

it."), *rev'd on other grounds,* 274 N.C. 473, 164 S.E.2d 2 (1968); *see also State v. Arnold,* 147 N.C. App. 670, 673, 557 S.E.2d 121, 121 (2001) ("It is critical to our system of government and the expectation of our citizens that the courts not assume the role of legislatures. However poised and eager we may be at times to launch our agenda, judges have not been entrusted by the people of this State to be legislators."), *aff'd per curiam,* 356 N.C. 291, 569 S.E.2d 648 (2002). As the present case so vividly illustrates, the task is rarely an easy one.

Affirmed.

Judges TYSON and JACKSON concur.