LISA BAKER CUCINA, Plaintiff v. CITY OF JACKSONVILLE and DIXIE FAYE PICKETT, Defendants

No. COA99-364

(Filed 16 May 2000)

**1. Motor Vehicles— automobile accident—negligence—proper lookout—summary judgment improper**

The trial court erred in an automobile accident case by granting summary judgment in favor of defendant Pickett because there are genuine issues of material fact concerning: (1) Pickett's negligence, since the evidence viewed in the light most favorable to plaintiff indicates plaintiff's vehicle entered the intersection first and that Pickett thereby was required to yield the right-of-way; and (2) Pickett's maintenance of a proper lookout, since Pickett testified that it did not look like an intersection and she did not recall seeing an intersecting street.

**2. Motor Vehicles— automobile accident—contributory negligence—summary judgment improper**

The trial court erred in an automobile accident case by granting summary judgment in favor of defendants on the basis that plaintiff was contributorily negligent as a matter of law, because it remains an issue for the jury whether a reasonably prudent person exercising ordinary care should have remembered the stop sign was down at the intersection of the accident, and whether plaintiff should have taken some sort of precautionary measures upon approaching the intersection many hours later.

**3. Cities and Towns— automobile accident—stop sign knocked down—public duty doctrine inapplicable**

Plaintiff's claims against the City of Jacksonville for damages sustained in an automobile accident at an intersection where the

stop sign normally controlling the street was knocked down fifteen hours earlier in a prior accident is not barred by the doctrine of governmental immunity based on the public duty doctrine, because plaintiff has not alleged that the City negligently failed to protect her from a crime.

**4. Immunity— governmental—waiver—liability insurance**

The trial court erred in granting summary judgment in favor of defendant City of Jacksonville because although the maintenance of stop signs constitutes a discretionary function entitling the City to the defense of governmental immunity in plaintiff's claim for damages sustained in an automobile accident at an intersection where the stop sign normally controlling the street was knocked down fifteen hours earlier in a prior accident, the City waived this immunity since it was covered by a liability insurance policy at the time of this collision. N.C.G.S. § 160A-485(a).

Appeal by plaintiff from judgments entered 21 September and 23 September 1998 by Judge Carl L. Tilghman in Onslow County Superior Court. Originally heard in the Court of Appeals 6 January 2000. An opinion was filed by this Court 4 April 2000 and withdrawn 19 April 2000. The present opinion supersedes the 4 April 2000 opinion.

*John W. Ceruzzi, Jeffrey S. Miller and Anne K. O'Connell, for plaintiff-appellant.*

*Crossley, McIntosh, Prior & Collier, by Samuel H. MacRae, for defendant-appellee City of Jacksonville.*

*Wallace, Morris & Barwick, P.A., by P.C. Barwick, Jr. and Elizabeth A. Heath, for defendant-appellee Dixie Faye Pickett.*

JOHN, Judge.

Plaintiff Lisa Baker Cucina appeals the trial court's grant of summary judgment in favor of defendants City of Jacksonville (the City) and Dixie Faye Pickett (Pickett). We reverse the trial court.

Pertinent facts and procedural history include the following: At approximately 6:00 p.m. on 27 January 1996, plaintiff and Pickett were involved in an automobile collision. Plaintiff was traveling north on Pine Valley Road (Pine Valley) in Jacksonsville while Pickett was proceeding west on Brynn Marr Road (Brynn Marr). Traffic at the

intersection of the two streets was normally governed by stop signs on Brynn Marr. However, an accident at 3:00 a.m. on 27 January 1996 had resulted in the stop sign controlling west-bound traffic on Brynn Marr being knocked down. None of the parties disputes Pickett's failure to stop at the intersection and the subsequent collision between plaintiff's vehicle and that of Pickett. It is further undisputed that plaintiff, who resides on Pine Valley, was cognizant of the 3:00 a.m. incident and had observed the downed stop sign when traveling to work on the morning of 27 January 1996.

Plaintiff filed suit 3 September 1997, asserting Pickett had been negligent, *inter alia*, in failing to yield the right of way and by failing to keep a proper lookout. As to the City, plaintiff alleged it had been aware of the downed Brynn Marr stop sign for fifteen hours prior to the collision at issue and that it had negligently failed to conduct repairs thereto during that period of time.

Pickett filed answer 30 October 1997 asserting plaintiff's contributory negligence; plaintiff's subsequent reply alleged Pickett was accorded the last clear chance to avoid colliding with plaintiff's vehicle. The City's 3 November 1997 answer denied it had notice of the downed stop sign and further set forth immunity from suit and contributory negligence as defenses.

The City and Pickett subsequently moved for summary judgment, which motions were allowed by the trial court on 21 September and 23 September 1998 respectively. Plaintiff timely appealed.

A motion for summary judgment is properly granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.G.S. § 1A-1, Rule 56(c) (1999). A defendant moving for summary judgment bears the burden of showing either that (1) an essential element of the plaintiff's claim is nonexistent; (2) the plaintiff is unable to produce evidence which supports an essential element of its claim; or, (3) the plaintiff cannot overcome affirmative defenses raised in contravention of its claims. *Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). In ruling on such motion, the trial court must view all evidence in the light most favorable to the non-movant, accepting the latter's asserted facts as true, and drawing all reason-

able inferences in its favor. *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 583, 448 S.E.2d 280, 281 (1994).

[1] We first review the trial court's grant of Pickett's summary judgment motion.

> The purpose of a summary judgment motion is to foreclose the need for a trial when . . . the trial court determines that only questions of law, not fact, are to be decided. Summary judgment may not be used, however, to resolve factual disputes which are material to the disposition of the action.

*Robertson v. Hartman*, 90 N.C. App. 250, 252, 368 S.E.2d 199, 200 (1988) (citation omitted). Further, summary judgment is rarely appropriate in a negligence action. *Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997).

In order to set out a *prima facie* claim of negligence against Pickett, plaintiff was required to present evidence tending to show that (1) Pickett owed a duty to plaintiff; (2) Pickett breached that duty; (3) such breach constituted an actual and proximate cause of plaintiff's injury; and, (4) plaintiff suffered damages in consequence of the breach. *Davis v. Messer*, 119 N.C. App. 44, 54-55, 457 S.E.2d 902, 908-09, *disc. review denied*, 341 N.C. 647, 462 S.E.2d 508 (1995).

Thorough review of the record reflects a genuine issue of material fact as to the negligence of Pickett. The uncontradicted evidence was that the stop sign normally controlling the street on which Pickett was traveling had been knocked down. Pickett's conduct thus "must be judged in the light of conditions confronting" her. *Dawson v. Jennette*, 278 N.C. 438, 446, 180 S.E.2d 121, 126-27 (1971).

N.C.G.S. § 20-155(a) (1999) provides:

> When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

As Pickett's vehicle was located on the right, she was entitled to rely upon plaintiff's statutory obligation to yield the right-of-way if the "two vehicles approach[ed] or enter[ed] [the] intersection . . . at approximately the same time." *Id.*; *see Douglas v. Booth*, 6 N.C. App. 156, 159-60, 169 S.E.2d 492, 495 (1969) (where plaintiff and defendant approached intersection at approximately the same time and plaintiff

"was approaching from [defendant's] left and [the latter] was approaching from plaintiff's right . . ., [defendant] was entitled to rely on G.S. 20-155(a) granting the vehicle on the right the right of way when [two vehicles] approach an intersection at approximately the same time"). However, if plaintiff's vehicle

> reached the intersection first and had already entered the intersection, [Pickett] was under [a duty] to permit the plaintiff's automobile to pass in safety.

*Bennett v. Stephenson*, 237 N.C. 377, 380, 75 S.E.2d 147, 150 (1953). In addition, Pickett's conduct was governed by the general duty required of all motorists "to keep a reasonable and proper lookout in the direction of travel and see what [they] ought to see." *Keith v. Polier*, 109 N.C. App. 94, 99, 425 S.E.2d 723, 726 (1993).

Viewed in the light most favorable to plaintiff, *see Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, evidence in the record indicates plaintiff's vehicle entered the intersection first and that Pickett thereby was required to yield the right-of-way, *see Bennett*, 237 N.C. at 380, 75 S.E.2d at 150. Plaintiff testified in her deposition that she was "almost through the intersection" when the collision occurred. In addition, plaintiff's vehicle was damaged on the passenger side while the front driver's portion of Pickett's vehicle was damaged, circumstantial evidence tending to show plaintiff's vehicle entered the intersection first and was struck by Pickett's vehicle as plaintiff was attempting to traverse the intersection. *Compare Douglas*, 6 N.C. App. at 160, 169 S.E.2d at 495 (damage to front of plaintiff's automobile and left front door of defendant's vehicle tended to show plaintiff had not entered intersection first).

While we acknowledge that "the right of way . . . is not determined by a fraction of a second," *Dawson*, 278 N.C. at 445, 180 S.E.2d at 126, and that the instant case is close, the evidence viewed most favorably to plaintiff, *see Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, raises a genuine issue as to which vehicle first entered the intersection and obtained the right-of-way.

The record also reflects a genuine issue of material fact as to whether Pickett was maintaining a proper lookout. The latter testified in her deposition that

> [i]t didn't look like no intersection to me. . . . I don't recall seeing [an intersecting street].

To conclude, therefore, a reasonable jury could find that plaintiff entered the intersection first and obtained the right-of-way, that Pickett breached the duty to yield to plaintiff or to keep a proper lookout by proceeding through the intersection, and that such breach was a proximate cause of injury to plaintiff. Plaintiff's evidence thus set out a *prima facie* case of negligence against Pickett, *see Davis*, 119 N.C. App. at 54-55, 457 S.E.2d at 908-09, and summary judgment in favor of the latter was inappropriate, *see Lyles*, 120 N.C. App. at 99, 461 S.E.2d at 350.

[2] Notwithstanding, Pickett interjects a final argument, also raised by the City, claiming plaintiff was contributorily negligent as a matter of law because

> she knew the stop sign controlling [Pickett's] direction of travel had been knocked down in an accident occurring earlier that morning . . . [but] did not take a single precautionary measure in going through the intersection . . . .

However, assuming *arguendo* the foregoing contentions sustain a factual issue as to plaintiff's contributory negligence, such negligence is not thereby established as a matter of law.

> Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted.

*Nicholson*, 346 N.C. at 774, 488 S.E.2d at 244 (citation omitted). It therefore remains an issue for the jury whether "a reasonably prudent person exercising ordinary care," *Smith v. Wal-Mart Stores*, 128 N.C. App. 282, 288, 495 S.E.2d 149, 153 (1998), should have remembered the stop sign was down and consequently taken some sort of precautionary measures upon approaching the intersection many hours later, *see id.* (jury must determine whether plaintiff's failure to notice wet floor inside store entrance on rainy day constituted contributory negligence barring claim for injuries resulting from fall), and summary judgment in favor of either Pickett or the City on the basis that plaintiff was contributorily negligent as a matter of law constituted error by the trial court.

[3] We consider next the primary arguments addressed to the trial court's grant of the City's summary judgment motion. The City asserts

plaintiff's claims are barred by the doctrine of governmental immunity, and devotes the majority of its appellate brief to discussion of the public duty doctrine (the doctrine). However, two recent decisions of our Supreme Court, *Lovelace v. City of Shelby*, 351 N.C. 458, —— S.E.2d —— (2000) and *Thompson v. Waters*, 351 N.C. 462, —— S.E.2d —— (2000), indicate that the doctrine does not operate to bar plaintiff's claims *sub judice*.

The doctrine was first adopted by our Supreme Court in the context of a sheriff accused of negligently failing to protect a citizen from a criminal act, *see Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991). The Court formulated the doctrine as follows:

> [t]he general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish *police protection* to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every *criminal act*.

*Id.* at 370-71, 410 S.E.2d at 901 (citation omitted) (emphasis added).

The doctrine has since been extended by this Court "to a variety of local governmental operations." *Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 480, 495 S.E.2d 711, 715, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998). Such extensions were disavowed, however, in *Lovelace* and *Thompson*.

> While this Court [our Supreme Court] has extended the public duty doctrine to state agencies required by statute to conduct inspections for the public's general protection, *see Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998); *[Stone*, 347 N.C. 473, 495 S.E.2d 711], we have never expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public, *see Isenhour v. Hutto*, 350 N.C. 601, 517 S.E.2d 121 (1999) (refusing to extend the public duty doctrine to shield a city from liability for the allegedly negligent acts of a school crossing guard). . . . Thus, the public duty doctrine, as it applies to local government, is limited to the facts of *Braswell*.

*Lovelace*, 351 N.C. at 461, —— S.E.2d at ——; *see also Thompson*, 351 N.C. at 465, —— S.E.2d at —— ("This Court has not heretofore

applied the public duty doctrine to a claim against a municipality or county in a situation involving any group or individual other than law enforcement.")

Accordingly, as plaintiff has not alleged that the City negligently failed to protect her from a crime, *cf. Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901, the doctrine does not bar plaintiff's claim against the City, *see Lovelace*, 351 N.C. at 461, —— S.E.2d at ——.

[4] In the alternative, the City asserts that its

acts with regard to maintaining stop signs falls under [its] discretionary powers,

thus insulating the City from a claim of negligence by operation of governmental immunity. Absent a statute imposing liability, municipalities

acting in the exercise of . . . discretionary . . . authority, conferred by their charters or by statute, and when discharging a duty imposed solely for the public benefit, . . . are not liable for the tortious acts of their officers or agents.

*Hamilton v. Hamlet*, 238 N.C. 741, 742, 78 S.E.2d 770, 771 (1953).

The City contends N.C.G.S. § 160A-300 (1999) governs re-erection of downed stop signs, while plaintiff maintains N.C.G.S. § 160A-296 (1999) applies. Relevant portions of each statute include the following:

A city may by ordinance prohibit, regulate, divert, control, and limit pedestrian or vehicular traffic upon the public streets, sidewalks, alleys, and bridges of the city.

G.S. § 160A-300.

(a) A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation. General authority and control includes but is not limited to:

(1) The duty to keep the public streets, sidewalks, alleys, and bridges in proper repair; [and,]

(2) The duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions . . . .

G.S. § 160A-296.

Although G.S. § 160A-296 imposes a "positive duty" upon cities "to maintain [their] streets in a reasonably safe condition," *Stancill v. City of Washington*, 29 N.C. App. 707, 710, 225 S.E.2d 834, 836 (1976), G.S. § 160A-300 "grants cities discretionary authority but imposes no affirmative duty," *Talian v. City of Charlotte*, 98 N.C. App. 281, 287, 390 S.E.2d 737, 741, *aff'd*, 327 N.C. 629, 398 S.E.2d 330 (1990). Accordingly, the defense of governmental immunity would be applicable herein only if G.S. § 160A-300 controls. *See Hamilton*, 238 N.C. at 742, 78 S.E.2d at 771.

Our courts have

consistently held that installation, *maintenance* and timing of traffic control signals at intersections are discretionary governmental functions.

*Talian*, 98 N.C. App. at 286, 390 S.E.2d at 741 (emphasis added). Notably, in *Rappe v. Carr*, 4 N.C. App. 497, 167 S.E.2d 48 (1969), this Court held the defense of governmental immunity barred plaintiffs' suit against the Town of Belmont based upon a collision occurring at an intersection governed by a malfunctioning traffic signal. The plaintiffs had alleged the signal governing their lane of travel "was not exhibiting any light," that it had been malfunctioning for "several days," and that the Town had notice of the defect. *Id.* at 498, 167 S.E.2d at 49. Pursuant to N.C.G.S. § 160-200, the predecessor statute to G.S. § 160A-300, this Court held that

[w]hile municipalities are not required to install . . . traffic control signals, they may do so as an exercise of their police power. The installation and *maintenance* of such signals in and by municipalities are governmental functions . . . .

*Rappe*, 4 N.C. App. at 499, 167 S.E.2d at 49 (citation omitted) (emphasis added).

If writing upon a clean slate, we might be persuaded to delineate a distinction between installation and maintenance of a traffic control device. Under such a theory, although G.S. § 160A-300 would govern installation of traffic control devices, G.S. § 160A-296 would impose a duty on the City, not subject to the defense of governmental immu-

nity, to repair such devices in order "to maintain [the] streets in a reasonably safe condition," *Stancill*, 29 N.C. App. at 710, 225 S.E.2d at 836; *see also Hamilton*, 238 N.C. at 742, 78 S.E.2d at 771 (statute may subject city to liability); *Wagshal v. District of Columbia*, 216 A.2d 172, 174 (D.C. Ct. App. 1966) (although decision to install stop sign is discretionary, once sign is installed, municipality has duty to keep its streets "reasonably safe" by repairing or replacing downed sign); *Grantham v. City of Topeka*, 411 P.2d 634 (Kan. 1966) (same).

However, given that this Court, unlike our Supreme Court, is bound by decisions of previous panels on "the same issue, albeit in a different case," *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), we must follow the ruling in *Rappe* and hold that maintenance of stop signs constitutes a discretionary function, thereby entitling the City to the defense of governmental immunity.

Notwithstanding, we reverse the trial court's grant of summary judgment in favor of the City. Construing all reasonable inferences in plaintiff's favor, as we must, *Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, it appears from the record the City was covered by a liability insurance policy at the time of the collision at issue, thereby waiving immunity from suit. *See* N.C.G.S. § 160A-485(a) (1999) (city waives tort immunity to extent it is indemnified by liability insurance policy); *Barnett v. Karpinos*, 119 N.C. App. 719, 729, 460 S.E.2d 208, 213 (city's acknowledgment of insurance policy precluded summary judgment in its favor), *disc. review denied*, 342 N.C. 190, 463 S.E.2d 232 (1995); *cf. Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (waiver of governmental immunity does not create cause of action where none previously existed), *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988).

In closing, we note the record reflects the parties focused in the trial court almost exclusively upon the public duty doctrine. Indeed, not only the earlier arguments, but the appellate briefs filed with this Court likewise address applicability of the doctrine in depth, with only cursory attention, if any, given to governmental immunity, the City's insurance policy, the effect of the City's ordinance governing installation of traffic control devices, *see* Jacksonville City Code § 25-62, or the elements of plaintiff's underlying claim. As the record thus has not been fully developed on these issues, we decline to address the merits of plaintiff's claim, and simply hold that summary judgment was inappropriate at this stage of the proceedings. *See Barnett*, 119 N.C. App. at 729, 460 S.E.2d at 213 (grant of summary

judgment in city's favor based on governmental immunity reversed, but merits of plaintiff's claim not reached in "belie[f] that such an undertaking would be premature").

In sum, we reverse the trial court's grant of summary judgment as to both Pickett and the City, and remand this case for further proceedings not inconsistent with our opinion herein.

Reversed and remanded.

Judges McGEE and HUNTER concur.