[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 6, 2012
JOHN LEY
CLERK

_____

No. 11-10509

_____

D.C. Docket No. 2:09-cv-00026-WKW-WC


BILLY FREE,

                                        Plaintiff - Appellee,

WILEY SANDERS TRUCK LINES, INC.,

                                        Intervenor Plaintiff,

                        versus

JAMES BAKER,
R + L CARRIERS SHARED SERVICES, LLC,
GREENWOOD MOTOR LINES, INC.,

                                        Defendants - Appellants,

R & L TRANSPORTATION, LLC, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 6, 2012)

Before CARNES, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

In this case arising from the collision of two tractor-trailer trucks, the defendants do not dispute their liability for negligence. Instead, they argue that the plaintiff presented insufficient evidence at trial to establish that the negligent conduct proximately caused some of his injuries. The plaintiff presented expert medical testimony that the truck wreck aggravated the degenerative spinal condition that he had suffered from for twenty years. He asked for damages for medical expenses, pain and suffering, and permanent injury. The jury found that he was entitled to $483,750.00, which it awarded as a lump sum as part of a general verdict. The defendants contend that the district court erred in not granting their motion for judgment as a matter of law on damages because, they argue, the evidence does not support part of the jury's lump sum damages award.

I.

Just before 5:00 a.m. on April 19, 2007, Billy Free was driving a tractor-trailer truck for Wiley Sanders Truck Line on I-85 in North Carolina. James Baker was driving a tractor-trailer truck for his employers, R + L Carriers Shared Services, LLC, and Greenwood Motor Lines. Free entered the right lane, and Baker crashed into the back of Free's truck, propelling it 360 feet down the

2

highway and through a guard rail. Free's truck overturned.

Free filed a lawsuit in Montgomery County, Alabama circuit court against Baker, Greenwood Motor Lines, R + L Carriers Shared Services, and R&L Transportation, LLC. The defendants removed the case to federal court. Free's motion to remand was denied, and R&L Transportation was dismissed as fraudulently joined. Free's amended complaint asserted four counts: (1) negligence, (2) wantonness, (3) negligent/wanton entrustment, (4) negligent/wanton hiring retention, supervision, or maintenance. Before trial, Free dismissed all claims against the defendants except for negligence, and he dropped his demand for punitive damages.

The case proceeded to trial on the negligence claim. Free's amended complaint asserted: "As a proximate result of Defendants' negligence, Billy Free was injured and damaged in that he was hurt all over his body, incurred medical expenses, suffered back surgery, suffered physical and mental pain, lost income/jobs because of his inability to work and will continue to suffer in the future." In a pre-trial conference just before the jury was selected, Free's counsel described the damages Free was claiming at that point as: "Medical expenses, $72,000, and also it's going to be in evidence of $48,000 subrogation, a surgery,

and mental pain and anguish."[1]  Counsel  emphasized that Free claimed damages

for past, present, and future pain and suffering and permanent injury in the form of

"12 percent vocational disability."  Free decided not to seek future lost wages.

At the close of Free's evidence, the defendants moved for judgment as a

matter of law under Federal Rule of Civil Procedure 50(a), and the district court

decided to hold that motion until the close of all the evidence.  At that time, the

defendants renewed their Rule 50(a) motion, which the district court denied.

The jury was instructed:  "Finally, as to the first issue on which plaintiff has the

burden of proof, if you find by a preponderance of the evidence that Defendant

James Baker was negligent in any one or more of the ways contended by plaintiff

and that such negligence was a proximate cause of plaintiff's injury, then you must

proceed to the next inquiry," which is contributory negligence.  (Emphasis added.)

The jury was told that if it found that Free was not contributorily negligent and

that Baker's negligence was the proximate cause of only a "technical" injury to

Free, it should award nominal damages.  If the jury found actual damages,

however, it should award an amount for "medical expenses, pain and suffering,

---

[1]The subrogation claim is not involved in this appeal.

and permanent injury" in one lump sum.[2]

The jury returned a verdict that:  Baker was negligent and his negligence proximately caused the accident; Free was not contributorily negligent; and Free was entitled to $483,750.00 in damages.  After the district court entered judgment on that verdict, the defendants filed a post-trial motion asking for judgment as a matter of law under Rule 50(b) or for a new trial under Rule 59.  They "challenged the sufficiency of Plaintiff's evidence of an exacerbation injury" and argued that he had not proved that the accident caused some of his damages.  Free's response to that motion relied on his expert's testimony at trial. The district court denied the motion.  This is the defendants' appeal from the judgment.

II.

The defendants contend that the evidence was insufficient to support the jury verdict on certain "<u>categories</u> of claimed damages."  (Emphasis added.) Specifically, they challenge the award of damages for "a post-Accident back surgery and related 12% permanent disability rating."  They argue that they are entitled to judgment as a matter of law on those damages, yet they ask for a new

---

[2]In the district court the defendants objected only to a permanent injury instruction, arguing that there were no grounds to give it, but they do not challenge any of the jury instructions in this appeal.

5

trial on damages as relief. They do not, however, contend that the district court erred in denying their alternative request for a new trial, as distinguished from their request for judgment as a matter of law.

A.

We review de novo a district court's denial of a motion for judgment as a matter of law, viewing the evidence in the light most favorable to the verdict. See D'Angelo v. Sch. Bd. of Polk Cnty., Fla., 497 F.3d 1203, 1208 (11th Cir. 2007). "[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007). For a sufficiency review in a diversity case, we apply the substantive state law that supplies the rule of decision, see Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011), which in this case is North Carolina law. We will reverse a district court's denial of a motion for judgment as a matter of law "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Perera v. U.S. Fid. and Guar. Co., 544 F.3d 1271, 1274 n.1 (11th Cir. 2008) (quotation marks omitted).

We review a district court's denial of a motion for a new trial only for an

abuse of discretion. St. Luke's Cataract and Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1200 n.16 (11th Cir. 2009). Deferential review "is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." Id. (quotation marks omitted). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Id. (quotation marks and alteration omitted).

Because the defendants contend that they are entitled judgment as a matter of law on damages but ask for relief in the form of a new trial on damages, one could debate which standard of review applies. It makes no difference, however, because under either standard the defendants' sufficiency of the evidence challenge fails.

## B.

Damages are an element of a negligence claim under North Carolina law. See Cucina v. City of Jacksonville, 530 S.E.2d 353, 355 (N.C. Ct. App. 2000) (holding that to establish a prima facie case of negligence a plaintiff must show that "(1) [defendant] owed a duty to plaintiff; (2) [defendant] breached that duty; (3) such breach constituted an actual and proximate cause of plaintiff's injury; and, (4) plaintiff suffered damages in consequence of the breach"). The defendants do not challenge the jury's finding that they are liable for negligence,

7

and as a result, they concede that Free is entitled to at least some of the damages the jury awarded him.

We presume the jury followed its instructions, found actual damages, and awarded a lump sum for "medical expenses, pain and suffering, and permanent injury," or any combination of those things, or any one of them. See, e.g., United States v. Lopez, 649 F.3d 1222, 1237 (11th Cir. 2011) ("We presume that juries follow the instructions given to them."). The defendants did not request that the jury return a verdict breaking the damage award down into categories. In fact, they requested an instruction for a lump sum damages award.[3] The jury's verdict is a general one; it does not divide the damages award into "categories;" it simply awards $483,750.00 as a lump sum. It makes no sense to contend, as the defendants do, that they are entitled to judgment as a matter of law on some categories of damages when there are no categories of damages in the award.

The defendants rely on an opinion of this Court that did consider (and reject) an argument that the district court should have granted judgment as a matter

---

[3]The district court simplified that proposed instruction and gave it substantially as the defendants had requested in the jury's verdict form. The defendants' proposed instruction was: "If you find that James Baker was guilty of negligence which proximately caused the accident and Billy Free Jr. was injured as a proximate consequence of the accident, what sum of money do you find would reasonably compensate Billy Free Jr. for his injuries caused by the accident?" The verdict form given to the jury stated: "If Mr. Baker was negligent and his negligence proximately caused the accident, and if Mr. Free was not contributorily negligent, what amount is Mr. Free entitled to recover for personal injury from Defendants?"

8

of law on some of the damages awarded by the jury.  See Nebula Glass Int'l, Inc. v. Reichhold, Inc., 454 F.3d 1203, 1207 (11th Cir. 2006).  In that case, however, the jury had awarded specific amounts for specific categories of damages (out of pocket expenses, unpaid customer claims, lost profits), and the defendant was challenging two of those categories, which it was able to do because the damages were divided into separate amounts, not all lumped together.  See id.  Not only that, but the defendant in Nebula Glass was not asking for a new trial on damages as part of its motion for judgment as a matter of law.  See id.  It was arguing, instead, that as a matter of law damages could not be awarded for lost profits and for a particular amount of the unpaid customer claims.  Id.  The relief it sought was to set aside those two categories of damages, leaving the third category to be awarded to the plaintiff.  See id.  The Nebula Glass case does not support the defendants' position in this case but instead illustrates how they should have gone about preserving any issues regarding categories of damages.  Having allowed the jury to return a lump sum damages award, and having admitted that Free is entitled to some damages, the defendants cannot be entitled to judgment as a matter of law on the award of damages.[4]

---

[4] In the district court the defendants stated that they had "not suggested that Plaintiff has no legal right to pursue compensation for any cuts, bruises, or soreness that resulted from the Accident."  They did not ask for remittitur in the district court or in this Court, and by conceding

9

Furthermore, as we will discuss in the next section of this opinion, even if the defendants did argue that Free was entitled to no damages, it would not change the outcome of this case. Free presented sufficient evidence for the issue of damages to go to the jury, the jury decided that he was entitled to them, and the defendants are asking this Court either to reweigh evidence already weighed by the jury or to send the case back for a new jury to try the weighing again.

## III.

In the alternative, even if the defendants had properly presented and preserved the issue of whether there was sufficient evidence to support all of the components of the damages award, they would still lose this appeal because there was enough evidence.

The defendants contend that the evidence was insufficient to establish that the truck wreck was the "medical cause" of Free's need for back surgery and the 12% permanent disability that followed that surgery. They say that the surgery was required before the wreck, so the wreck could not have caused the need for it. The surgery in question is the "X-Stop" surgery that was performed on Free by neurosurgeon Robert H. Bradley, four to five months after the wreck.[5] Dr.

---

liability for negligence, they have admitted on appeal that Free suffered some damages.

[5]X-Stop is a relatively new type of decompression procedure in which a device is inserted between two vertebrae to open up space where nerve roots are impinged.

10

Bradley, who had been Free's treating physician for twenty years, testified as his medical expert at trial.

Expert testimony is required to establish medical causation under North Carolina law. Holley v. ACTS, Inc., 581 S.E.2d 750, 753 (N.C. 2003) ("In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."(quotation marks omitted)). To prove causation, the expert must be able to testify that there is a reasonable scientific probability that a certain cause led to a particular result. Seay v. Wal-Mart Stores, Inc., 637 S.E.2d 299, 302 (N.C. Ct. App. 2006). Expert testimony on medical causation cannot be based on speculation and conjecture. Id.

The North Carolina Supreme Court has determined that a plaintiff failed to establish medical causation when her experts testified that they did not really know what caused her injury. See Holley, 581 S.E.2d at 753. The court concluded in the Holley case that "a review of the expert testimony reveal[ed] that neither of plaintiff's physicians could establish the required causal connection between plaintiff's accident and her [deep vein thrombosis]." Id. The plaintiff's experts testified along these lines in that case:

Q. . . . what, in your opinion, could or might have caused this DVT?

11

A. I don't really know what caused the DVT.

Q. Is it fair to say that you can't state to a reasonable degree of medical certainty what caused the DVT in this particular incident?

A. It is fair to state, yes.

Id. at 754. The court explained:

> The entirety of the expert testimony in the instant case suggests that a causal connection between plaintiff's accident and her DVT was possible, but unlikely. Doctors are trained not to rule out medical possibilities no matter how remote; however, mere possibility has never been legally competent to prove causation. Although medical certainty is not required, an expert's "speculation" is insufficient to establish causation.

Id. (citation omitted).

The defendants argue that Dr. Bradley gave that kind of speculative and conjectural testimony about whether the wreck caused Free's need for the X-Stop surgery. They are mistaken. Unlike the expert in Holley case, who testified that he did not really know what caused the plaintiff's injury, Dr. Bradley testified that his post-accident treatment of Free, including the X-Stop surgery, was "definitely" related to the wreck. He testified that between January 23, 1997, when he performed the last surgery on Free before the wreck, until the time of the wreck ten years later in April 2007, Free was working, was not having any more surgery, and was managing his back problems.

12

After the wreck Dr. Bradley treated Free on May 23, 2007.  He testified that at that time:

> [Free's] chief complaint was lower back and left leg pain. Interestingly enough, most of his symptoms in the past have been predominantly right-sided. There was one incident in the past where he did have left leg pain and I operated on the left side of his spine. But chief complaint, lower back and left leg pain.

Dr. Bradley sent Free to physical therapy, but by June 13, 2007:

> [Free] was getting worse.  He was beginning to have increasing and worsening pain in the left buttock radiating down to the left hip and the left groin, also some occasional pain radiating into the left testicle. And at that point, he had also developed some intermittent problems with controlling his bladder.

On July 25, Free "continued to complain of left hip and lower back pain as well as left leg pain."  Dr. Bradley went on to testify:

> Q. Dr. Bradley, was Billy Free doing everything possible that you asked him to do and that he could do to avoid this eventual surgery?
>
> A. Yes. And actually, he always has.

Dr. Bradley was asked: "[A]s his doctor for almost 20 years, do you relate this surgery that you performed, X-Stop, on September the 4th, 2007, to this trucking accident on April the 19th, 2007?"  His answer was, "Definitely."  And he went on to say:

> Q. All right. Do you have an opinion as to a permanent impairment rating that you would give to Billy as a result of this truck wreck?

13

A. I do. I assigned him a 12 percent impairment rating.

Q. And when you say impairment rating, that means a 12 percent impairment rating that's with him for the rest of his life.

A. Yes.

As those excerpts from Dr. Bradley's testimony illustrate, he testified with a reasonable degree of medical certainty that the wreck caused Free to need the surgery that Dr. Bradley performed, and it caused the 12% permanent disability that followed.  It was the jury's job to decide how to weigh that testimony based on Dr. Bradley's testimony that the wreck was the medical cause of the injuries that resulted.  See Seay, 637 S.E.2d at 303 ("The degree of a doctor's certainty goes to the weight of the testimony and the weight given expert evidence is a duty for" the factfinder).

Under North Carolina law if a plaintiff has a preexisting injury, he can recover damages only if the defendant's conduct caused the injury to be "aggravated or activated" and only to the extent of that "enhancement or aggravation":

> [When] injuries are aggravated or activated by a pre-existing physical or mental condition, defendant is liable only to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's condition. The defendant is not liable for damages attributable solely to the original condition.  Plaintiff is confined to

14

those damages due to its enhancement or aggravation.

Potts v. Howser, 161 S.E.2d 737, 742 (N.C. 1968) (citations, alterations, and quotation marks omitted). The defendants insist that Dr. Bradley's testimony failed to establish that Free's preexisting back condition was aggravated or activated by the wreck.

They focus on the fact that Dr. Bradley's notes from his treatment of Free on March 26, 2006 (about a year before the wreck) state: "I also previously recommended that he make a decision regarding additional spine surgery for his required lumbar decompression and fusion." (Emphasis added.) There was evidence that the X-Stop surgical procedure that Dr. Bradley performed on Free after the wreck was less invasive than some other decompression procedures, such as fusion surgery.[6] The defendants point to Dr. Bradley's own words in his treatment notes, written before the accident, stating that the decompression procedure was "required." That means, according to the defendants, that the accident could not be the medical cause of the need for the X-Stop surgery on Free's back. They argue that Dr. Bradley's testimony was "internally

---

[6]Dr. Bradley testified that X-Stop surgery is different from "fusion" surgery, which "involves taking off bone; taking off ligament; not uncommonly, taking out part of the disc" and involves "rods and screws" that are installed into the back.

inconsistent" and failed to establish that Free's back condition was aggravated by the wreck. The surgery could not be required as a result of the accident if it was required before the accident as a result of the degenerative spinal disease.

Dr. Bradley, however, testified that the wreck did aggravate Free's preexisting back condition, making surgery necessary at the time it was performed:

Q. What information did you have after this accident that you're basing your opinion that Mr. Free's complaints of pain after this accident were caused by this accident?

A. The fact that I had not seen him in the period of time that we discussed. The fact that the accident occurred, that within two days with the Pri-Med documentation he had the onset of lower back and left leg pain. That the symptoms persisted despite conservative treatment at Pri-Med and persisted and worsened over time until I operated on him with the X-Stop procedure.

Q. All right. The -- is it your understanding that Mr. Free did not have these symptoms prior to the accident?

A. He did not have the symptoms to this degree. You've already proven that he had symptoms. And I discussed his statements as well that during the truck driving, that not uncommonly he would have back pain. He did not have the severe symptoms that he had which required medical treatment and kept him off work until we did the last surgery.

Dr. Bradley's testimony about the wreck aggravating Free's degenerative back disease was consistent and unequivocal. His opinion that Free's back got

worse as a result the accident was not simply based on the fact that the worsening occurred after the accident. Instead, it was also based on his twenty-year history of treating Free for his back problems and Free's failure to respond to other treatment methods. The jury was presented with evidence that for a whole decade before the accident, Free had chosen not to have the recommended back surgery and had been managing his back problems with more conservative, non-surgical treatment.

The defendants presented testimony from their own expert. Anticipating the testimony of the defendants' expert, Free asked the court for permission to present in rebuttal the testimony of another expert to bolster his case, but the court did not allow it. The court explained that Dr. Bradley had testified "in my view, credibly about Mr. Free," and another doctor (the defendants' expert) would contradict that testimony, and "[i]t will be up to the jury to sort it out." The court was right. It was a classic battle of experts. The jury watched and heard the two experts give conflicting testimony, and it credited Free's expert. That is what juries do. There was enough evidence to support the verdict.

**AFFIRMED.**[7]

---

[7]This appeal was originally scheduled for oral argument, but under 11th Circuit Rule 34-3(f) it was removed from the oral argument calendar.