JOHN LEE MYNHARDT, Plaintiff-Appellant v. ELON UNIVERSITY; LAMBDA CHI ALPHA, INC.; DELTA PI CHAPTER OF LAMBDA CHI ALPHA; and CLINTON JOSEPH BLACKBURN; JOHN FERRELL CASSADY; CHARLES KENNETH CALDWELL, JR.; DAVID WILLIAMSON WELLS; LINWOOD BRADY LONG; BRIAN THOMAS McELROY; WILLIAM JOSEPH HARTNESS; and ROBERT LAWRENCE OLSON, also known as ROBERT S. OLSON, JR., Defendants-Appellants

No. COA11-668

(Filed 1 May 2012)

**1. Negligence—duty of care—not owed to plaintiff—summary judgment proper**

The trial court did not err in a negligence action by granting summary judgment in favor of defendants. Defendants assumed no duty to protect plaintiff from drinking-related injuries at an off-campus party and no special relationship resulting in the imposition of a duty existed between defendants and plaintiff when plaintiff voluntarily, and with an invitation, attended an off-campus party of which defendant Elon had no knowledge.

**2. Negligence—agency relationship—argument unsupported**

Plaintiff's argument in a negligence case that defendants were liable to him based upon agency relationships was unsupported and without merit.

MYNHARDT v. ELON UNIV.

[220 N.C. App. 368 (2012)]

### 3. Negligence—joint venture—argument unsupported

Plaintiff's argument in a negligence case that defendants were liable to him based upon a joint venture was unsupported and without merit.

Appeal by Plaintiff from amended orders entered 28 January 2011 by Judge Howard E. Manning, Jr. in Superior Court, Alamance County. Heard in the Court of Appeals 10 January 2012.

*Butler Daniel & Associates, by A.L. Butler Daniel; Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr.; and The Law Office of Michael S. Petty, by Michael S. Petty, for Plaintiff-Appellant.*

*Cranfill Sumner & Hartzog LLP, by Dan M. Hartzog and Kari R. Johnson, for Defendant-Appellee Elon University.*

*Brown, Crump, Vanore & Tierney, L.L.P., by O. Craig Tierney, Jr., for Defendant-Appellee Lambda Chi Alpha, Inc.*

McGEE, Judge.

Plaintiff was a twenty-one-year-old student at Elon University (Elon) in February 2007 when, tragically, he was involved in an incident that left him paralyzed. Plaintiff had been out with friends on the evening of 2 February 2007 and, around midnight, they ended up at a bar in Burlington. Plaintiff remained at the bar until it closed at 2:00 a.m. on the morning of 3 February 2007. Upon leaving the bar at 2:00 a.m., Plaintiff and three friends started walking to a party one of them had heard about. Before they reached the party, they noticed another party taking place at 211 North Lee Street (the Lee Street house). Plaintiff and his friends decided to check out the party at the Lee Street house, even though they knew nothing about that party, nor who was sponsoring the party. Sometime after entering the Lee Street house, Plaintiff and one of his friends, Mary Kate Kelly (Kelly), entered the bathroom together, locked the door, and started to "make out." Plaintiff and Kelly had been in the bathroom about ten minutes when they heard someone knocking on the bathroom door. Neither Plaintiff nor Kelly opened the bathroom door, and the knocking grew louder.

According to Plaintiff, when he and Kelly did exit the bathroom, John Cassady (Cassady) and Clinton Blackburn (Blackburn) immediately confronted Plaintiff. Cassady was a student at Elon, and vice-president of the Delta Pi Chapter (the Chapter) of the Lambda Chi

Alpha fraternity (Lambda Chi and, along with Elon, Defendants). The Chapter is the Elon chapter of Lambda Chi. Blackburn was not a student at Elon, and was not associated with Lambda Chi. Plaintiff testified that Cassady and Blackburn began yelling at him and pushing him. Cassady was a tenant at the Lee Street house and Blackburn was visiting Cassady at the Lee Street house. Blackburn put Plaintiff in a "grip hold" from behind and started forcing Plaintiff toward the kitchen door exit. According to Plaintiff, before they made it to the door, Blackburn "forcefully pushed" Plaintiff to the floor. After being pushed to the floor, Plaintiff could not move his limbs. Cassady and Blackburn then dragged Plaintiff by his legs out the door. As a result of this incident Plaintiff, tragically, suffered permanent paralysis. Defendants contest some of the facts as presented above, but there is no dispute that Plaintiff was injured as Blackburn and Cassady were forcing him out of the Lee Street house.

The Lee Street house was located off the Elon campus and was not owned by Elon, Lambda Chi, or the Chapter. However, it was rented by some members of the Chapter, and apparently had been rented by members of the Chapter for some time. Elon did own the main facility in which the Chapter was located, and that facility was located on the Elon campus. Elon exercises control over certain aspects of "Greek" life on campus, and Elon has promulgated rules and regulations affecting Greek organizations. These regulations include specific protocols that must be followed if a fraternity or sorority desires to serve alcohol at a party conducted on-campus. Defendants recognized, prior to 3 February 2007, that off-campus parties involving fraternities did occur. According to certain national standards, which had been adopted by both Elon and Lambda Chi, dangerous incidents, such as fights or alcohol poisoning, were more likely to occur at off-campus parties. Prior to the 3 February 2007 incident, both Elon and Lambda Chi were aware of violations involving the Chapter, including alcohol violations, hazing, and arrests for marijuana offenses, and some of these incidents occurred off-campus. Defendants expressed concern regarding violations by members of the Chapter, and certain steps were taken to try and remedy those concerns. Both Elon and Lambda Chi had the authority to sanction the Chapter for rules violations.

Plaintiff brought this action against Defendants, the Chapter, Cassady, Blackburn, and other individuals on 5 June 2008. Plaintiff thereafter filed several amended complaints. Both Elon and Lambda Chi moved for summary judgment on 27 May 2010. The Chapter also

moved for summary judgment. The trial court granted summary judgment in favor of Defendants by orders dated 30 December 2010. The trial court denied the Chapter's motion for summary judgment with respect to Plaintiff's negligence claim. The trial court amended those orders on 28 January 2011, certifying the orders granting summary judgment to Defendants for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Plaintiff appeals the orders granting summary judgment in favor of Defendants.

## I. Analysis

Initially, we note that Plaintiff's appeal is interlocutory because Plaintiff's negligence claim against the Chapter remains. However, because the orders from which Plaintiff appeals constitute final judgments with respect to Plaintiff's claims against Defendants, and because the trial court properly certified the orders for immediate review pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, we review Plaintiff's appeal. N.C.R. Civ. P. § 1A-1, Rule 54; N.C. Gen. Stat. § 1-277 (2011); N.C. Gen. Stat. § 7A-27 (2011); *see also Hoots v. Pryor*, 106 N.C. App. 397, 400-01, 417 S.E.2d 269, 272 (1992).

## II. Standard of Review

A motion for summary judgment is properly granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.G.S. § 1A-1, Rule 56(c) (1999). A defendant moving for summary judgment bears the burden of showing either that (1) an essential element of the plaintiff's claim is nonexistent; (2) the plaintiff is unable to produce evidence which supports an essential element of its claim; or, (3) the plaintiff cannot overcome affirmative defenses raised in contravention of its claims. In ruling on such motion, the trial court must view all evidence in the light most favorable to the non-movant, accepting the latter's asserted facts as true, and drawing all reasonable inferences in its favor.

. . . .

> The purpose of a summary judgment motion is to foreclose the need for a trial when . . . the trial court determines that

only questions of law, not fact, are to be decided. Summary judgment may not be used, however, to resolve factual disputes which are material to the disposition of the action.

*Cucina v. City of Jacksonville*, 138 N.C. App. 99, 101-02, 530 S.E.2d 353, 354-55 (2000) (citations omitted).

### III. Negligence

[1]    In order to set out a *prima facie* claim of negligence against [defendant], plaintiff was required to present evidence tending to show that (1) [defendant] owed a duty to plaintiff; (2) [defendant] breached that duty; (3) such breach constituted an actual and proximate cause of plaintiff's injury; and, (4) plaintiff suffered damages in consequence of the breach.

*Id.* at 102, 530 S.E.2d at 355 (citation omitted).

The dispositive issue in the present case is whether Defendants owed Plaintiff a duty of care. "Whether a defendant owes a plaintiff a duty of care is a question of law." *Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App. 544, 552, 543 S.E.2d 920, 925 (2001) (citation omitted). Because we hold that Defendants did not owe Plaintiff a duty of care in this case, we affirm the decisions of the trial court.

First, Plaintiff argues that Defendants owed him a duty of care based upon a theory of voluntary undertaking.

The voluntary undertaking theory has been consistently recognized in North Carolina, although it is not always designated as such. *See Pinnix*, 242 N.C. at 362, 87 S.E.2d at 897 (recognizing that a duty of care "may arise generally by operation of law under application of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care"); *Davidson and Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666, 255 S.E.2d 580, 584, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979) (recognizing that "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence"). The undertaking theory has been described as follows:

Akin to the special relationship exceptions is the "undertaking" theory implicated when a defendant voluntarily "undertakes" to provide needed services to the plaintiff

when otherwise she would have no obligation. The agreement may arise from a binding contract between the parties or from a gratuitous promise, unenforceable in contract.

Logan § 2.20, at 27. Furthermore, the voluntary undertaking doctrine has been applied in other jurisdictions under similar circumstances. *See Furek v. University of Delaware*, 594 A.2d 506 (Del.1991) (holding that, pursuant to Restatement (Second) of Torts § 323, a university may be liable for a student's injuries during fraternity hazing activities when the university knows of the dangers involved in such activities and undertakes to regulate the activities).

*Davidson*, 142 N.C. App. at 558-59, 543 S.E.2d at 929.

Plaintiff argues that

Defendants knew of the specific dangers involved with open fraternity parties, and they undertook to regulate said activities. Defendants voluntarily undertook to provide services to, and to impose supervision, regulation, enforcement, and control over, [the Chapter] and students participating in Greek organizations or at "Greek" events for the protection of students such as [Plaintiff].

However, in *Hall v. Toreros, II, Inc.*, 176 N.C. App. 309, 316-17, 626 S.E.2d 861, 867 (2006), this Court rejected plaintiff's argument that the adoption of regulations for the purpose of protecting a class of people constitutes a voluntary undertaking that creates a duty to that class of people that would not otherwise exist. In a case involving a defendant restaurant, this Court stated that it did not want to

discourage, indeed penalize, voluntary assumption or self-imposition of safety standards by commercial enterprises, thereby increasing the risk of danger to their customers and the public. Accordingly, we reject plaintiffs' assertion that adoption of the [safety standards] by [the defendant] as company policy, standing "alone[,] [wa]s sufficient for [a] finding of the legal duties submitted to the jury[.]"

*Hall*, 176 N.C. App. at 317, 626 S.E.2d at 867. Plaintiff relies on *Davidson* to support his position. We do not find *Davidson* controlling in the present case. In *Davidson*, the plaintiff was a junior varsity cheerleader at the University of North Carolina at Chapel Hill (UNC). *Davidson*, 142 N.C. App. at 546, 543 S.E.2d at 921. Prior to an UNC

women's basketball game, the junior varsity cheerleaders were warming up and practicing stunts in Carmichael Auditorium, a sports venue owned by UNC and located on the UNC campus, where the women's basketball game was to occur. *Id.* at 546, 543 S.E.2d at 922. While practicing a three-tier pyramid stunt, which UNC knew to be dangerous, the plaintiff cheerleader fell and sustained serious bodily injuries and permanent brain damage. *Id.* According to evidence presented at trial, though the plaintiff cheerleader and the other cheerleaders were representing UNC at official UNC functions, "UNC had not adopted guidelines regarding the experience required to join either cheerleading squad, the skill level required to perform particular stunts, or safety in general." *Id.* at 548, 543 S.E.2d at 923. "UNC 'never shared with [the cheerleaders] information regarding safety and technical cheerleading skills.'" *Id.* Although the UNC varsity cheerleaders attended summer camps "where they were exposed to [national] guidelines for cheerleading and safety[,]" the junior varsity cheerleaders were not sent to those camps, and the national guidelines had not been adopted by UNC. *Id.*

In *Davidson*, the issue presented was "whether a university ha[d] an affirmative duty of care toward a student athlete who [wa]s a member of a school-sponsored, intercollegiate team." *Davidson*, 142 N.C. App. at 553, 543 S.E.2d at 926. In *Davidson*, this Court made it clear that this was "an issue of first impression in North Carolina." *Id.*

UNC "acknowledged that it assumed certain responsibilities with regard to teaching the cheerleaders about safety." *Id.* at 559, 543 S.E.2d at 929. Evidence also showed that UNC employees were aware of the particular danger in the type of stunt in which the plaintiff cheerleader was injured. *Id.* at 548, 543 S.E.2d at 923. The Department of Student Life was responsible for cheerleading squads in the years just prior to the accident. *Id.* Frederic Schroeder (Schroeder), Director of Student Life, sent letters to the coach of the varsity cheerleading squad warning about the dangers of the three-tier pyramid, and also sent letters to the co-captains of the varsity squad urging them to adopt certain safety guidelines. *Id.* Schroeder received a letter from the Assistant Athletic Director at UNC asking him to " 'take charge of any future decisions with regard to the safety and well-being' of the cheerleading squads." *Id.* at 549, 543 S.E.2d at 924. These letters were sent several years prior to the accident. *Id.* This Court held that "the evidence is uncontroverted that [UNC] voluntarily undertook to advise and educate cheerleaders in regard to safety. Therefore, we hold that [UNC] owed plaintiff a duty of care[.]" *Id.* at 559, 543 S.E.2d at 930.

In the present case, we do not find that Defendants' actions are analogous to the actions of UNC and its employees in *Davidson.* We want to encourage universities and Greek organizations to adopt policies to curb underage drinking and drinking-related injuries or other incidents. Adopting such policies, however, does not make a university or Greek organization an insurer of every student, member, or guest who might participate in off-campus activities. *Davidson,* 142 N.C. App. at 556, 543 S.E.2d at 928. We hold that Defendants assumed no duty to protect Plaintiff from drinking-related injuries at an off-campus party.

Plaintiff also argues that a duty existed because there was a special relationship between Defendants and Plaintiff. Plaintiff again primarily relies on *Davidson.* In *Davidson,* this Court cited a treatise on the law of torts in support of the proposition that a duty may exist for a defendant in certain special relationships, where

> "plaintiff is typically in some respect particularly vulnerable and dependant upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. In addition, such relations have often involved some existing or potential economic advantage to the defendant. Fairness in such cases thus may require the defendant to use his power to help the plaintiff, based upon the plaintiff's expectation of protection, which itself may be based upon the defendant's expectation of financial gain."

*Davidson,* 142 N.C. App. at 554, 543 S.E.2d at 926-27 (citation omitted). In *Davidson,* this relationship is clear. The plaintiff was a cheerleader, representing UNC at school events. The plaintiff and the other cheerleaders helped to promote UNC to potential students and donors. *Id.* at 555, 543 S.E.2d at 927.

In the present case, Plaintiff was attending an off-campus party, uninvited, and Plaintiff was not acting in any manner as a representative of Elon. Plaintiff had no relationship whatsoever with Lambda Chi, the Chapter, Cassady, or Blackburn. This Court was careful to limit its holding in *Davidson* to the facts of that case:

> We emphasize that our holding is based on the fact that plaintiff was injured while practicing as part of a school-sponsored, intercollegiate team. Our holding should not be interpreted as finding a special relationship to exist between a university, college, or other secondary educational institution, and every stu-

dent attending the school, or even every member of a student group, club, intramural team, or organization. We agree with the conclusion reached by other jurisdictions addressing this issue that a university should not generally be an insurer of its students' safety, and that, therefore, the student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care.

*Davidson*, 142 N.C. App. at 556, 543 S.E.2d at 928 (citations omitted). We hold that no special relationship resulting in the imposition of a duty existed between Defendants and Plaintiff when Plaintiff voluntarily, and uninvited, attended an off-campus party of which Elon had no knowledge. Suffice it to say that no special relationship existed on these facts between Lambda Chi and Plaintiff, either.

We have also examined Plaintiff's argument that he alleged sufficient affirmative acts by Defendants to survive summary judgment based upon ordinary principles of negligence. We find it unnecessary to include any analysis for this argument and hold that it fails as a matter of law. We hold that Defendants owed no duty to Plaintiff on these facts and, therefore, Plaintiff's claims for negligence fail as a matter of law.

### IV.  Agency

[2]  Plaintiff next argues that Defendants are liable to him based upon agency relationships. We disagree.

Plaintiff cites to some general law regarding the principle of agency, followed by an unsupported statement that, in this case, Elon and Lambda Chi were principals to the Chapter, and thus liable by *respondeat superior* for the torts of the Chapter member Cassady. However, Plaintiff provides no specific support for his argument that the law of agency applied in this particular fact situation. After thorough research, we conclude this is because no such authority exists. We decline to make new law by recognizing an agency relationship between Plaintiff and any Defendants on the facts of this case. Plaintiff's argument is without merit.

### V.  Joint Venture

[3]  Plaintiff's argument with regard to joint venture likewise fails. Plaintiff again does not support his argument with any law applicable to the facts before us, and we find no law to support Plaintiff's position. Plaintiff's argument is without merit.

**IN RE APPEAL OF MURDOCK**

[220 N.C. App. 377 (2012)]

*VI.  Conclusion*

Defendants owed no duty to Plaintiff that would support Plaintiff's claims for negligence. Plaintiff's claims based upon agency and joint venture likewise fail as a matter of law. We affirm the trial court's grant of summary judgment in favor of Defendants.

Affirmed.

Judges CALABRIA and GEER concur.